**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**THOMASVILLE DIVISION**

| | | |
|---|---|---|
| AVERY DANIELLE BAKER, | * | |
| Plaintiff, | * | |
| VS. | * | CASE NO. 6:05-CV-13 (HL) |
| | | 42 U.S.C. § 1983 |
| THOMAS COUNTY PRISON, | * | |
| SANDRA ABRAMS, Warden, | | |
| ROBERT DONOVAN, P.A., | * | |
| ALBERT MANNING, and | | |
| JAMES THOMAS | * | |
| Defendants. | * | |

## REPORT AND RECOMMENDATION

Before the court is Defendants Thomas County Prison, Sandra Abrams, Albert Manning and Raymond Thomas' Motion for Summary Judgment filed on September 8, 2005. Plaintiff was notified by the court of the filing of said motions and given thirty days to respond to the Motion. No responses were filed.

## Factual History

On March 17, 2005, Plaintiff Baker filed the current action pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff contends that he was denied medical access for an injury which he claims was caused while he was working a prison detail on August 27, 2004. Specifically, he claims that while picking up logs during a storm, he "pulled my right testicle into my stomach." (R-1, p. 4). He contends that he was told by the urologist that he needed surgery to find out what was wrong. He claims that the urologist told his counselor, Karl

Abrams, that it "was alright to set me an appointment for the surgery." *Id.* He then claims that his counselor asked Defendant Sandra Abrams if he could set the appointment, but was told that he could not because the county had no money. *Id.* Thus, pursuant to 42 U.S.C. § 1983, the Plaintiff's claims involve deliberate indifference to his medical needs.

## **DISCUSSION**

Federal Rule of Civil Procedure 56, which deals with motions for summary judgment provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed. R. .Civ. P. 56 (c); Warrior Tombigee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to

demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384. 1387-88 (11th Cir.1991), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

Plaintiff claims that he was denied medical care following two separate incidents, the first of which occurred on August 27, 2004, while he was working on an outside prison detail. He claims that while picking up a log, he felt his right testicle pull up into his

stomach. (R-1, p. 4). Specifically, the Plaintiff claims that after he picked up a log, he felt his back pop and his "scrotum sacs had immediately went in to convulsion." *Id.* at 5.  He stated that when he arrived back at the prison, that he requested to see the Physician's Assistant, Defendant Robert Donovan, wherein he told Defendant Donovan about the incident. *Id.*  He claims that after seeing Defendant Donovan, he was then sent to get an ultrasound. *Id.*  He then claims that the urologist who took the ultrasound could not find his right testicle, but that the urologist recommended microscopic surgery to "see what was going on in my testicle sack."*Id.*  Thereafter, he contends that Defendant Warden Abrams told him she would not pay for the surgery, that he was not injured while at the prison and that if he did not continue working, he would serve his time "in the hole." *Id.*  The Plaintiff then states that Defendant Donovan was keeping him from receiving the medication he needed for pain. *Id.*

The Plaintiff further claims that he was denied medical care for a back injury which occurred after a fall in the prison shower on November 4, 2004. *Id.* at 7.  He claims that other inmates told Defendants Sgt. Manning and Officer Thomas who attempted to pick him up but because of his pain, they were unable to. *Id.*  He contends that he was picked up by other inmates, as directed by Defendant Abrams, dropped to the floor, picked back up and taken to his cell. *Id.*  There, the Plaintiff claims that Defendants Manning and Thomas were told by Defendant Abrams to dress him, wherein he was taken to the medical office and then transported to the hospital. *Id.* at 8.  When he returned to the prison, Plaintiff asserts he was told by Defendant Abrams to go back to work or be written up everyday. *Id.*  Thus, he claims

he has been denied medical care in violation of his constitutional rights.

In order to recover in this case, Plaintiff must establish that defendants were deliberately indifferent to his serious medical needs in order to prevail on his constitutional claim. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Prison officials or prison doctors cannot be held accountable "under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as infliction of punishment." *Id*. at 848. "Thus, the official must have a subjectively sufficiently culpable state of mind." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (internal citations omitted). "Likewise, in addition to the subjective awareness of the relevant risk, *Estelle* requires that plaintiff show more than mere negligence to establish a violation of the Eighth Amendment. . . ." *McElligott*, 182 F.3d at 1255 (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The medical care provided a prisoner is not required to be "perfect, the best obtainable, or even very good." *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D.Ga. 1980). However, a "delay in treatment can, depending on the circumstances

and the length of the delay, constitute deliberate indifference." *Hinson v. Edmond*, 192 F.3d 1342, 1348 (11th Cir. 1999) (citing *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994)).

The United States Supreme Court has held that to show an objectively serious deprivation, it is first necessary to demonstrate an objectively "serious medical need," one that, if left unattended, "pos[es] a substantial risk of serious harm." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). In the current case, therefore, the Plaintiff is first required to show that his testicular condition and the injuries he suffered in the shower incident were serious and that if left untreated, they were capable of causing serious harm.

The Eleventh Circuit has further held that a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir.1994)). In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir.2000) (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970, 128 L.Ed.2d 811).

If a plaintiff is able to establish a serious medical need, he must then establish that a prison official acted with deliberate indifference to a serious medical need, by showing that the defendant had subjective knowledge of a risk of serious harm; that the defendant

disregarded the risk; and that his conduct was more than mere negligence. *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004).

The Defendants contend that the Plaintiff did not have a serious medical need, a necessary element in a claim of deliberate indifference. In their Brief, the Defendants contend that Plaintiff's testicular condition "was not 'diagnosed by a physician as mandating treatment.'" (R-22, p. 8). Specifically, the Defendants cite an affidavit submitted by Defendant Donovan, the Physician's Assistant at the Thomas County Prison who testified that the Plaintiff was examined by him on July 13, 2004, upon his entrance to the prison. (R-25, p. 2). He testified that based on the record of Plaintiff's medical care, he released the Plaintiff to full duty after the examination. (R-25, Exh.A). He then avers that he saw the Plaintiff on July 19, 2004 for complaints of a rash, which prompted him to remove the Plaintiff from work detail for two days. *Id.* Next, Defendant Donovan saw Plaintiff on July 21, 23, and 27 for symptoms caused by the rash. *Id.* On August 3, 2004, Defendant Donovan saw Plaintiff for stomach pain complaints, wherein the Defendant treated the Plaintiff for reflux, likely caused by the antibiotics prescribed for the rash. *Id.* Defendant Donovan then saw Plaintiff on August 24, 2004, for complaints of allergies and head pain which the Defendant treated. *Id.*

On September 10, approximately fourteen days after Plaintiff picked up the log and claims he was injured, Defendant Donovan saw Plaintiff for complaints of back pain and that his right testicle had been "shrinking" over the last two days. *Id.* Defendant Donovan treated

the Plaintiff for back pain and testified that he thought Plaintiff's right testicle was missing. *Id.* Plaintiff was seen by Defendant Donovan for the same complaints on September 13 and 15, 2004 and was seen by a physician on September 17, 2004 wherein thoracic x-rays and an ultrasound were ordered. *Id.* On September 21, the Plaintiff refused all pain medication offered by Defendant Donovan. *Id.* On September 22 and 23, 2004, the Plaintiff underwent the x-rays of his thoracic spine (R-25, Ex. B) and an ultrasound (R-25, Ex. C), wherein the x-rays showed nothing remarkable and the ultrasound showed only one testicle. *Id.* On October 6, 2004, Plaintiff saw Dr. Tim Grayson, a urologist, who diagnosed Plaintiff as having a "disappearing testicle", stated that he suspected that Plaintiff was born without the right testicle or had an undescended testicle (R-25, Ex. D). *Id.* Dr. Grayson offered treatment options and found that the Plaintiff could return to normal work activities. *Id.*

On October 28, 2004, Defendant Donovan saw Plaintiff who complained of pain from urinating which the Plaintiff claimed was caused by medication prescribed by the Defendant. *Id.* Defendant Donovan noted in his affidavit that the medication prescribed was intended to prevent painful urination. (R-25, p. 7). He stated that he attempted to get a urine sample, but Plaintiff refused to comply. *Id.* On November 1, 2004, Plaintiff provided an unwitnessed urine sample that Defendant Donovan found might be contaminated and prescribed medication for a urinary tract infection. (R-25, Ex. A).

Then, on November 4, 2004, the Plaintiff was seen by Defendant Donovan for a fall in the shower, which he claimed caused injury to his back. *Id.* Defendant Donovan noted in

his affidavit that the Plaintiff failed to claim neck pain at the time. (R-25, p. 7). The medical notes show that Plaintiff resisted being lifted from the shower and resisted being dressed to be taken to the medical care room. *Id.* Defendant Donovan testified that Plaintiff was taken to the hospital after being evaluated by him that same day. (R-25, p. 7). The records from the hospital visit (R-25, Ex. G), show that Plaintiff complained of neck and back pain, that his x-rays were normal and that he was diagnosed with neck and back strain, ordered not to work for two days and ice the affected area. *Id.* Notes from November 9, 10, and 24, 2004 as well as December 2, 3, 6 and 16, 2004, show that Defendant Donovan repeatedly saw the Plaintiff for pain complaints wherein the Plaintiff refused to take prescribed medication or provide a urine specimen. *Id.* The same resulted from visits made to Plaintiff by Defendant Donovan on January 6, 14 and 21, 2005. *Id.* On January 28, Plaintiff was able to provide a urine sample which was normal. *Id.* Plaintiff was seen by Defendant Donovan on February 28, 2005 and March 15, 2005 for complaints of back pain lower abdominal and allergies, wherein the Defendant provided medication for those maladies. *Id.*

Legal precedent dictates that the Plaintiff in the current case must be able to establish that his testicular condition was indeed a serious medical need. If he were able to establish that his version of the facts is accurate, Plaintiff would then have to prove that the Defendants had knowledge that a failure to treat the condition would cause harm, that they disregarded the risk and that the failure to treat the condition was more than mere negligence.

The court finds that, based on the pleadings, affidavits and exhibits, the Plaintiff has

failed to show that neither his testicular condition or the injuries he suffered in the fall in the shower were serious medical needs. The Plaintiff has failed to provide any evidence, other than his own claims, as to the severity of his injuries. As such, Plaintiff has failed to meet the first prong of the deliberate indifference standard as set out in *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Thus, it is not necessary to determine if the Defendants had subjective knowledge of a risk of serious harm; that the defendant disregarded the risk; and that their conduct was more than mere negligence. *See, Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004). Because the Plaintiff has failed to allege that any genuine issues of material fact remain as to whether the Defendants were deliberately indifferent to Plaintiff's medical needs, his claim must fail.

**ACCORDINGLY**, because it appears that Defendants are entitled to judgment as a matter of law, **IT IS THE RECOMMENDATION** of the United States Magistrate Judge that the Motion for Summary Judgment filed on their behalf be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff may serve and file written objections to this **RECOMMENDATION** with the United States District Judge, WITHIN TEN (10) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 13th day of December, in the year 2005.

                S/ G. MALLON FAIRCLOTH
sWe              UNITED STATES MAGISTRATE JUDGE